IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATILINA NOMINEES PROPRIETARY LTD., et al., ) ) ) Plaintiffs, ) ) ) v. ) ) STERICYCLE, INC., ) ) Defendant. ) | No. 15-cv-10734<br><br>Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Catilina Nominees Proprietary Ltd. and Daniels Sharpsmart, Inc. ("Sharpsmart") sued Defendant Stericycle, Inc. ("Stericycle") alleging infringement of U.S. Patent No. 6,250,465 ("'465 Patent"), titled "Sharps Container." After the parties were well into fact discovery, the Court granted Plaintiffs' motion for leave to file an amended complaint to assert a new claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a). Now before the Court is Stericycle's motion to dismiss the newly added claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (Dkt. No. 140.) For the reasons stated below, Stericycle's motion is granted and Plaintiffs' false advertising claim is dismissed without prejudice.

## BACKGROUND

Because Stericycle has moved to dismiss the false advertising claim under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the amended complaint as to that claim and draw all reasonable inferences from those facts in Plaintiffs' favor. *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016).

In their amended complaint, Plaintiffs describe themselves as "innovators in the market for reusable containment solutions for collection of regulated medical waste." (Am. Compl. ¶ 11, Dkt.

No. 139.) Plaintiffs allege that they developed their patented reusable sharps container, known as the "Sharpsmart Container," to allow for the disposal of medical syringes while preventing individuals from reaching into the device to retrieve used needles. (*Id.* ¶ 12.) Along with the container itself, Plaintiffs offer a service that includes the delivery of clean containers as well as the pickup and sterilization of used full containers. (*Id.* ¶ 13.)

Stericycle is Plaintiffs' competitor in the medical waste market. (*Id.* ¶ 15.) In 2011, Stericycle entered into discussions with Plaintiffs concerning a potential business transaction. (*Id.* ¶ 16.) As part of those discussions, Plaintiffs gave Stericycle a confidential memorandum with details about the Sharpsmart Container. (*Id.* ¶ 17.) On December 27, 2013, Stericycle received Section 510(k) approval from the U.S. Food and Drug Administration ("FDA") for the "Stericycle Sharps Management Service Reusable Sharps Container." (*Id.* ¶ 18.) Stericycle's Section 510(k) submission described the device as a substitute for the Sharpsmart Container. (*Id.* ¶¶ 19, 21.)[1] Specifically, in the product description for its Section 510(k) submission, Stericycle described its container as having "a counterbalanced lid design that acts as a protective barrier to keep sharps objects within the container from coming back up through the lid and anyone from reaching into the container to retrieve sharps waste." (*Id.* ¶ 20 (quotation marks omitted).)

Plaintiffs' original complaint in this case, filed on November 30, 2015, asserted one count against Stericycle for alleged infringement of the '465 patent for the Sharpsmart Container. The amended complaint now also alleges that Stericycle's Section 510(k) submission and promotional materials for its own product are false and misleading in violation of the Lanham Act. According to Plaintiffs, Stericycle made the following false and misleading statements:

---

[1] The purpose of a Section 510(k) submission is to show that a new device does not need preapproval from the FDA to be marketed as safe and effective because it is "substantially equivalent" to another legally marketed device. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 317 (2008); 21 U.S.C. §§ 360c(f)(1)(A)(ii), (i)(1)(A), 360e(b)(1).

- Stericycle's container is "ideal for patient rooms and treatment areas where security and convenience are critical" and its "design utilizes safety/engineering controls that prevents access to the contents of the container." (*Id.* ¶ 35 (alterations and quotation marks omitted).)

- "IF NEEDLESTICKS ARE A PROBLEM, WE HAVE THE SOLUTION." (*Id.* ¶ 36. (quotation marks omitted).)

- Stericycle's containers "have marketing clearance from the FDA." (*Id.* (quotation marks omitted).)

- One of the container's benefits is a "100% sustained reduction in needlesticks," with an asterisk that notes that fact is "[b]ased on an independent national study." (*Id.* ¶ 37 (quotation marks omitted).)

- The container's lid option "incorporates safety/engineering controls that include limited access to the contents of the container." (*Id.* ¶ 38 (quotation marks omitted).)

With its present motion, Stericycle asks the Court to dismiss Plaintiffs' false advertising claim for two reasons: first, Stericycle argues that the newly added claim is barred by the applicable statute of limitations; and second, it claims that the amended complaint does not contain sufficient factual matter to state a claim and, in particular, to allege fraud with particularity.

## DISCUSSION

Under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A formulaic recitation of the elements is not enough to survive dismissal. *Id.*; *Twombly*, 550 U.S. at 555. Furthermore, the

3

Court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

Rule 9(b) additionally requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means that the plaintiff must plead "the who, what, when, where, and how" of the alleged fraud. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (internal quotation marks omitted). As Plaintiffs point out, whether a Lanham Act false advertising claim "must be pled in accordance with Rule 9(b) is not settled within the Seventh Circuit." *Towada Audio Co., Ltd. v. Aiwa Corp.*, No. 18-cv-4397, 2019 WL 1200748, at *8 (N.D. Ill. Mar. 14, 2019). However, the Seventh Circuit has suggested in dicta that Rule 9(b) does apply to such claims. *See Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014) (remarking that the plaintiff's Lanham Act claim "charges [the defendant] with a form of fraud, so we would expect [the] complaint to allege with particularity the nature of the grievance" (citing Fed. R. Civ. P. 9(b))). This Court readily concludes that the heightened pleading requirements of Rule 9(b) apply to Plaintiffs' false advertising claim. After all, Rule 9(b)'s requirements are implicated when a claim "sounds in fraud" or "is premised upon a course of fraudulent conduct." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (quotation marks omitted). And here, Plaintiffs accuse Stericycle of repeatedly sending out promotional materials containing materially false statements. Such a claim is plainly premised on a course of fraudulent conduct.

### I. Statute of Limitations

Stericycle first contends that Plaintiffs' false advertising claim is barred by the applicable statute of limitations—specifically, the three-year statute of limitations borrowed from the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/10a(e).

4

The Lanham Act does not contain an express statute of limitations. In that circumstance, the Supreme Court has indicated that courts considering the timeliness of federal claims should apply the statute of limitations from the most analogous state statute. *See Wilson v. Garcia*, 471 U.S. 261, 266 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."); *see also Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999) ("Because the Lanham Act does not contain a statute of limitations, federal courts have referred to analogous state statutes of limitations . . . ."). Several courts in this District have applied the ICFA's three-year limitations period to Lanham Act claims. *See Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, No. 12 C 9686, 2013 WL 6632741, at *3 (N.D. Ill. Dec. 16, 2013); *Ford v. Levy*, No. 04 C 8356, 2006 WL 8461525, at *1–2 (N.D. Ill. Apr. 10, 2006); *Johnson Controls, Inc. v. Exide Corp.*, 152 F. Supp. 2d 1075, 1079 (N.D. Ill. 2001); *see also Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 793–94 (7th Cir. 2002) (noting without comment that the district court applied the ICFA's statute of limitations period to the plaintiff's Lanham Act claims). This Court agrees that Illinois's most analogous statute is the ICFA. Both the ICFA and the Lanham Act provide for damages against defendants that have injured plaintiffs by using deceptive practices in commercial settings. *Compare Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (setting forth the elements of an ICFA claim), *with Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381–82 (7th Cir. 2018) (setting forth the elements of a Lanham Act false advertising claim). The Court thus applies the ICFA's three-year statute of limitations to Plaintiffs' claim.

It is irregular to dismiss a complaint based on the statute of limitations at the Rule 12(b)(6) stage. *See Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014).

That is because the running of the statute of limitations is an affirmative defense, and "[c]omplaints need not anticipate defenses and attempt to defeat them." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Accordingly, courts should deny motions to dismiss premised on a complaint's untimeliness when there is "***any*** set of facts that if proven would establish a defense to the statute of limitations." *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003). That said, dismissal under Rule 12(b)(6) is permitted when "the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

"[A] Lanham Act claim accrues when a claimant knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Ford*, 2006 WL 8461525, at *1 (internal quotation marks omitted). In this case, Stericycle argues that Plaintiffs' false advertising claim began accruing, at the latest, in 2015, when Stericycle insists it distributed the relevant promotional materials. It also suggests that Plaintiffs knew about those materials in 2015, or very shortly thereafter, because the parties were engaging in discovery related to this very lawsuit. If the Court accepts Stericycle's assertions, the three-year statute of limitations period would have expired sometime in 2018. Since Plaintiffs brought their false advertising claim on June 4, 2020, the claim would be time-barred under Stericycle's view.

But the amended complaint does not specify the dates upon which Stericycle distributed the brochures and promotional materials containing the allegedly false statements. At this stage, the Court may only consider the facts alleged in the complaint, as well as in the documents attached to, central to, and referred to in the complaint. *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020). In fact, the section of the amended complaint that describes Stericycle's

6

allegedly false and misleading advertising does not include a single reference to a particular period of time. (*See* Am. Compl. ¶¶ 31–39.)

Stericycle claims that the untimeliness of the false advertising claim is clear from an exhibit attached to the amended complaint, which shows some of the relevant promotional materials. (*See id.*, Ex. C, Dkt. No. 139-3.) Specifically, some pages of a brochure display in small font in the bottom right corner, "Copyright © 2015. Stericycle, Inc. All rights reserved." (*Id.* at STERI_0001862–63, STERI_0001875.) But this fine-print reference to a 2015 copyright date does not establish that the actions central to the false advertising claim occurred entirely in 2015. At most, the copyright date suggests that Stericycle engaged in the allegedly misleading advertising in 2015 at the earliest. Yet it is reasonable to infer that Stericycle continued to distribute the same promotional materials for years after they were originally produced or otherwise recycled such materials without properly updating their dates. Thus, the brochure does not establish the timeframe during which the alleged conduct occurred and falls far short of establishing an impenetrable statute of limitations defense. *See Xechem, Inc.*, 372 F.3d at 901.

Because the Court cannot determine from the face of the amended complaint when the alleged conduct took place, it need not reach Plaintiffs' secondary arguments concerning the statute of limitations period: namely, that the amended complaint relates back to the date of the original complaint under Federal Rule of Civil Procedure 15(c)(1), and that the limitations period accrued later because Stericycle committed continuing violations. *See Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) (explaining that the continuing violation theory allows the plaintiff to "reach back to its beginning even if that beginning lies outside the statutory limitations period" if the alleged wrongs are continuing). Stericycle's motion to dismiss on the false advertising claim as time-barred is denied.

7

## II. Sufficiency of the Allegations to State a Claim

Stericycle next argues that the allegations of the amended complaint do not suffice to state a claim for false advertising successfully. The Lanham Act prohibits the use of any false or misleading description or representation of fact in commercial advertising that "misrepresents the nature, characteristics, qualities, or geographic origin of" goods and services. 15 U.S.C. § 1125(a)(1)(B). To state a false advertising claim under the Lanham Act, the plaintiff must allege that:

> (1) the defendant made a material false statement of fact in a commercial advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) the plaintiff has been or is likely to be injured as a result of the false statement.

*Eli Lilly*, 893 F.3d at 381–82. Where the plaintiff alleges that a statement is literally false, it is not necessary to prove actual confusion because such a statement "will necessarily deceive consumers." *Id.* at 382. Stericycle contends that Plaintiffs' claim is deficient because all the alleged misrepresentations are nonactionable since they were (i) made outside the commercial realm, (ii) immaterial misrepresentations (*i.e.* "puffery"), or (iii) demonstrably true statements. The Court addresses each argument in turn.

Stericycle argues that the statements in its Section 510(k) submission to the FDA may not be considered for purposes of a Lanham Act claim because those statements were not used "in commerce" or "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). The Seventh Circuit has defined advertising as "a form of promotion to anonymous recipients," *First Health Group Corp., v. BCE Emergis Corp.*, 269 F.3d 800, 803–04 (7th Cir. 2001), and promotion as "a systematic communicative endeavor to persuade possible customers to buy the seller's product." *Neuros Co., Ltd. v. KTurbo, Inc.*, 698 F.3d 514, 522 (7th Cir. 2012).

8

The Court agrees with Stericycle that the statements in its Section 510(k) submission cannot form the basis for a false advertising claim under the Lanham Act. The intended audience for such a submission is not the anonymous consumer or possible buyers but a governmental agency. Plaintiffs have alleged that Stericycle's promotional brochure mentions its clearance from the FDA and the relevant 510(k) number (*see* Am. Compl. ¶ 36), but referencing those materials in an advertisement does not convert the materials themselves into advertisements. The Court thus looks exclusively to the statements in Stericycle's promotional materials as support for Plaintiffs' claim.

The Court next considers whether the statements in Stericycle's promotional materials, if false, are actionable or amount to nonactionable puffery. In the false advertising context, puffery means statements that describe products or services "in such blustery, exaggerated terms that no consumer would rely on them as truthful, such as 'lowest' prices or 'best' quality." *Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 934 (N.D. Ill. 2016). Puffery includes statements that "make a general claim of superiority so vague as to be incapable of being proved or disproved." *Id.* Such statements are not materially false and are thus nonactionable under the Lanham Act. *Id.* The Court may consider the materiality of allegedly false statements at the motion to dismiss stage. *See Saltzman v. Pella Corp.*, No. 06 C 4481, 2007 WL 844883, at *4 (N.D. Ill. Mar. 20, 2007).

The separate statements about its product that Plaintiffs allege Stericycle used in its brochures include the following:

1) "Designed for Ease of Use and Increasing Safety;"

2) "[I]deal for patient rooms and treatment areas where security and convenience are critical;"

9

3) "[D]esign utilizes safety/engineering controls that prevents access to the contents of the container;"

4) "IF NEEDLESTICKS ARE A PROBLEM, WE HAVE THE SOLUTION;"

5) Containers "have marketing clearance from the FDA;"

6) "100% sustained reduction in needlesticks*." (Next to the asterisk, the brochure states that this fact is "[b]ased on an independent national study"); and

7) The "Horizontal Drop Lid" option "incorporates safety/engineering controls that include limited access to the contents of the container."

(Am. Compl. ¶¶ 35–38.) Stericycle compares these statements to those that other courts in this District have deemed immaterial puffery. *See e.g.*, *Segerdahl Corp. v. Am. Litho, Inc.*, No. 17-cv-3015, 2019 WL 157924, at *3–4 (N.D. Ill. Jan. 10, 2019) (finding that descriptions of services as offering "greater security, better quality and shorter turn-time" and providing "a level of flexibility not found anywhere else" were puffery); *Saltzman*, 2007 WL 844883, at *4 (finding that references to products as "durable," "manufactured to high quality standards," and "maintenance free," were subjective, non-quantifiable statements, and thus nonactionable); *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l Inc.*, No. 05 C 4088, 2005 WL 3557947, *10 (N.D. Ill. Dec. 26, 2005) (finding that the defendant's use of terms like "innovative" and "leveling the playing field" were nonactionable puffery).

Stericycle further points out that one of Plaintiffs here, Sharpsmart, successfully argued for the dismissal of false advertising claims brought against it based on statements similar to those at issue here. (*See* Mem. Op. & Order, *Daniels Sharpsmart, Inc. v. Becton, Dickinson & Co., Inc.*, No. 17-cv-6940 (N.D. Ill. May 20, 2018), Dkt. No. 28.) In *Daniels Sharpsmart*, another court in this District found that Sharpsmart's own advertisements constituted puffery where the advertisements claimed that its containers were the "safest in the world," "the safer system that's

10

protecting healthcare workers around the world," and posed "no risks in transit," and that its products "remove[] the risk of injury from your sharps containers." (*Id.*)

This Court concludes that several of Stericycle's allegedly false statements amount to more than mere puffery. To be sure, some of the statements employ what might be characterized as vague buzzwords. For instance, the first, second, and fourth statements enumerated above—that the containers are "designed for ease of use and increasing safety," "ideal for patient rooms and treatment areas," and offer a solution to needlesticks—are puffery. (Am. Compl. ¶¶ 35–36 (edited capital letters).) But the Court finds that the following assertions are actionable: that Stericycle's product "prevents access to the contents of the container," results in a "100% sustained reduction in needlesticks," and incorporates safety controls including "limited access to the contents of the container." (*Id.* ¶¶ 35, 37, 38.)[2] These statements are not like the clearly exaggerated or unprovable assertions (*i.e.*, "greater security," "better quality," and "lowest prices") that courts typically deem puffery. *See Segerdahl*, 2019 WL 157924, at *3–4; *Martin*, 183 F. Supp. 3d at 934. For example, in contrast to the nonquantifiable promise of "increasing safety," the assertion that a container's lid prevents access to the needles inside is testable. *See Rosenthal Collins Grp.*, 2005 WL 3557947, at *10 (explaining that actionable statements may be differentiated from puffery by "determining whether the claims are specific or absolute characteristics of a product capable of testing"). It is the kind of claim that hospitals and other consumers might look for and rely upon when choosing needle disposal products. *See id.*

---

[2] The allegation that Stericycle markets its products as "hav[ing] marketing clearance from the FDA" (Am. Compl. ¶ 36 (quotation marks omitted)) is also a quantifiable and actionable statement of fact. But the Court does not interpret the complaint to be claiming that the assertion is false. Instead, it appears Plaintiffs are challenging the statements upon which Stericycle relied to obtain such clearance.

(describing puffery as "boasting upon which no reasonable buyer would rely" (quotation marks omitted)).³

Stericycle also contends that Plaintiffs have failed to demonstrate how the relevant statements are false or misleading, and that several of the challenged statements are in fact demonstrably true. But that is not an appropriate inquiry at this stage of the proceedings. Plaintiffs have plausibly stated claims for relief by setting forth the specific statements that they challenge, asserting that those statements are false, and alleging that they suffered injury as a result. Whether or not the statements are actually false is a question for another day. *See Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018) (explaining that dismissal based on the pleadings is improper when the relevant inquiry is fact-laden).

Finally, the Court turns to the question of whether Plaintiffs have met the heightened pleading standard under Rule 9(b) that applies to claims of fraud. To plead fraud with particularity successfully, "[t]he complaint must state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014). For the same reason that the Court rejected Stericycle's statute of limitations defense, it now finds that Plaintiffs have failed to meet the heightened Rule 9(b) pleading standard: the amended complaint does not contain sufficient detail

---

³ The Court also notes that Stericycle's statements here different than those at issue in the *Daniels Sharpsmart* case, where nearly all the statements were overexaggerated claims of superiority, such as referring to their containers as the "safest in the world." (*See* Mem. Op. & Order at 1, *Daniels Sharpsmart*, No. 17-cv-6940 (N.D. Ill. May 20, 2018), Dkt. No. 28); *see also August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 618 (7th Cir. 1995) ("'comparison' to a mystery rival is just puffery"). The assertion in *Daniels Sharpsmart* that came closest to the statements alleged here was that the product "removes the risk of injury from your sharps containers." (*See* Mem. Op. & Order at 1, *Daniels Sharpsmart*, No. 17-cv-6940 (N.D. Ill. May 20, 2018), Dkt. No. 28.) But even that statement makes a hyperbolic promise upon which no reasonable consumer would rely.

regarding the "when" of the alleged fraud. It also fails to provide sufficient detail regarding how and to whom the alleged misstatements were made.

In their response brief, Plaintiffs argue that their amended complaint alleges the "who, what, when, where, and how," *AnchorBank, FSB*, 649 F.3d at 615, with particularity, claiming that:

> Plaintiffs provide detailed factual allegations that state: the who (Stericycle); the what (falsely advertising and selling products in the United States as preventing access to sharps when they do not for at least some people); the when (conduct began at least in 2015, though potentially as early as 2013, and is continuing); and the where and how (via Stericycle's promotional materials and brochures identified in the FAC to potential purchasers of reusable sharps services, i.e. hospitals).

(Resp. at 5, Dkt. No. 148 (citing Am. Compl. ¶¶ 31–45; *id.* Ex. C).) But the amended complaint does not contain the detailed when, where, and how that Plaintiffs' response brief does. As discussed above, the amended complaint does not specify any timeframe regarding the misrepresentations at issue (let alone allege that the conduct started "at least in 2015" and "is continuing"). (*See* Am. Compl. ¶¶ 31–39); *see also VitalGo*, 2017 WL 6569633, at *9 (describing allegations that a defendant made false statements sometime between 2014 and 2016 as too "nebulous" to meet the Rule 9(b) standard). Likewise, the amended complaint simply alleges that Stericycle sent promotional materials to potential customers, but unlike Plaintiffs' response brief, it does not list hospitals or any example of who those customers might be. Plaintiffs cannot remedy these deficiencies now by adding facts to their response brief that are missing from their amended complaint. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")

That said, the inclusion of additional detail in their response brief suggests to this Court that Plaintiffs may be able to remedy the deficiencies of their pleading. As the amended complaint

is deficient only in that it fails to meet the heightened pleading standard of Rule 9(b), the Court therefore deems it prudent to dismiss Plaintiffs' false advertising claim without prejudice and grant them one additional opportunity to amend that claim. *See VitalGo*, 2017 WL 6569633, at *10 ("[B]ecause the Court has clarified for the first time in this case the applicability of Rule 9(b) to these claims, the Court will allow Plaintiffs one more opportunity to amend to try to meet that standard").

## CONCLUSION

For the reasons stated above, Stericycle's motion to dismiss Count II of Plaintiffs' amended complaint (Dkt. No. 140) is granted. The Court dismisses the false advertising claim in Count II, without prejudice, for failure to meet the heightened pleading requirements of Rule 9(b). Plaintiffs are granted leave to file a second amended complaint for the limited purpose of curing the deficiencies with respect to Count II.

ENTERED:

Dated: March 26, 2021

_____
Andrea R. Wood
United States District Judge